UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GOODEN, LOLITA ,
                    Plaintiff,
         v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2487 (JG)

---

JORDAN, TRACEY ,
                    Plaintiff,
         v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2486 (JG)

---

MARMOL, JACQUELINE,
                    Plaintiff,
          v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2484 (JG)

---

MENDEZ, DANNY AND WALKIRA MENDEZ,
                    Plaintiffs,
          v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2490 (JG)

---

MURRY, KEVIN ,
                    Plaintiff,
          v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2488 (JG)

---

ROMANO, NINA,
                    Plaintiff,
          v.
AMERICAN HOME PRODUCTS CORP., et al.,
                    Defendants.

CV 04 2485 (JG)

---

**PLAINTIFFS' JOINT MEMORANDUM IN REPLY ON THEIR MOTION FOR REMAND TO THE SUPREME COURT OF THE STATE OF NEW YORK**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT IN REPLY ............................................................................................... 2

POINT I. ....................................................................................................................... 2

   THERE IS AMPLE BASIS FOR DRUG WHOLESALER LIABILITY IN
   NEGLIGENCE AND STRICT PRODUCTS LIABILITY ............................................ 2

POINT II. ..................................................................................................................... 7

   THIS COURT'S DECISION ON THE REMAND ISSUE SHOULD NOT BE
   DEFERRED .......................................................................................................... 7

CONCLUSION ............................................................................................................. 8

# TABLE OF AUTHORITIES

## CASES

Albert Fadem Trust v. Worldcom,
  2002 US Dist. LEXIS 15272 (SDNY 2002)................................................................. 7

Arseneault v. Congoleum Corp.,
  2002 US Dist. LEXIS 5084 (SDNY 2002).................................................................. 2

Baker v. St. Agnes Hospital,
  70 A.D.2d 400, 421 N.Y.S.2d 81 (1st Dep't  1979) ..................................... 4

Brown v. Glaxo, Inc.,
  790 So.2d 35 (La. App. 1 Cir. 2000) ..................................................................... 5, 6

Golod v. La Roche,
  964 F.Supp. 841 (S.D.N.Y. 1997) ............................................................................ 4

In re Rezulin Products Liability Litigation,
  133 F. Supp.2d 272 (SDNY 2001) ........................................................................... 6

In re: Baycol Products Litigation,
  MDL 1431 (MJD), Case No. 02-2985, February 28, 2003 ...................................... 5

In Re: Consolidated Fen Phen Cases,
  2003 NY Dist. LEXIS 20231 (EDNY 2003) ............................................................. 7

In Re: Duke Energy Corp.,
  2003 US Dist. LEXIS 15406 (SDNY 2002) ............................................................. 7

In Re: Rezulin Products Liability Litigation,
  133 F.Supp.2d 272 (SDNY 2001) ............................................................................ 2

Nemazee v. Premier Inc.,
  232 F. Supp. 2d 172 (SDNY 2002) .......................................................................... 3

Norwalk v. Air-Way Electric,
  87 F2d 317 (2d Cir. 1937) ..................................................................................... 2, 7

Pampillonia v. RJR Nabisco Inc.,
  138 F3d 459 (2d Cir. 1998) .................................................................................... 2, 7

Pampillonia v. RJR Nabisco,
  138 F3d 459 (2d Cir. 1998) ....................................................................................... 7

Patterson v. R.M. Stephens & Co.,
  232 A.D.2d 178, 647 N.Y.S.2d 760 (1st Dep't 1996) .................................. 6

Stan Winston Creatures Inc. v. Toys R Us,
  2003 WL 1907978 (SDNY 2003) ............................................................................. 3

Tinnerholm v. Parke Davis & Co.,
  285 F.Supp. 432 (SDNY 1968) ............................................................................... 4

Wechsler v. Hoffman-La Roche, Inc.,
  198 Misc. 540, 99 N.Y.S.2d 588 (Sup.Ct. 1950) ................................................... 4

<u>Whitaker v. American Telecasting Inc.</u>,
  261 F3d 196 (2d Cir. 2001).................................................................. 2, 7

<u>Wolfgruber v. Upjohn Co</u>.
  72 A.D.2d 59, 423 N.Y.S.2d 95 (4th Dep't  1979) ...................... 3

## RULES

MDL Panel Rule §5.1,  199 FRD 425 (2002) .............................................7

## ARTICLES

Merrill, "Compensation for Prescription Drug Injuries,"
  59 Va.L.Rev. 1 ....................................................................................... 3

Rheingold, Products Liability The Ethical Drug Manufacturer's Liability,
  18 Rutgers L. Rev. 947 .......................................................................... 3

Willig, The Comment "K" Character: A Conceptual Barrier to Strict
  Liability,
  29 Mercer L.Rev. 545 ............................................................................ 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOODEN, LOLITA , | CV 04 2487 (JG) |
| Plaintiff, | |
| v. | |
| AMERICAN HOME PRODUCTS CORP., et al., | |
| Defendants. | |
| …*And Five Related Actions* | |

## PRELIMINARY STATEMENT

Plaintiffs LOLITA GOODEN, TRACEY JORDAN, JACQUELINE MARMOL, DANNY MENDEZ and WALKIRA MENDEZ, KEVIN MURRY, and NINA ROMANO ["plaintiffs"] respectfully offer this memorandum of law in reply to the papers submitted by defendants American Home Products Corp. [Wyeth] *et. al*, (the "defendants") in opposition to plaintiffs' motion to remand this action to the Supreme Court of the State of New York.  Defendants argue that the notice of removal of defendants Wyeth f/k/a American Home Products Corp. and Wyeth's affiliates ("Wyeth") is proper based on their contention that plaintiffs committed a "fraudulent joinder" by naming defendants ROGER SHEA, EDWARD J. WILDERMUTH, IRA JACOBSON, ANGELO RENALDO, STEVE MEYER, "JOHN DOE", TRUE IDENTITY UNKNOWN, EMPLOYED BY WYETH AS A SALES REPRESENTATIVE OR DETAIL MAN/MEN,  (collectively, the "detailers") and in violation of the law as applied to the facts of this case.

**ARGUMENT IN REPLY**

**POINT I.**

**THERE IS AMPLE BASIS FOR DRUG WHOLESALER
LIABILITY IN NEGLIGENCE AND STRICT PRODUCTS
LIABILITY**

In <u>Pampillonia v. RJR Nabisco Inc.,</u> 138 F.3d 459-61 (2d Cir. 1998), the Second Circuit explained the standard: "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence…that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against a non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *See also* <u>Whitaker v. American Telecasting Inc.,</u> 261 F3d 196 (2d Cir. 2001); <u>Norwalk v. Air-Way Electric,</u> 87 F2d 317 (2d Cir. 1937).

Here, defendants argue that the detailers plaintiffs named cannot be the basis of defeating diversity jurisdiction because "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *See* Defendants' Memoranum of Law ["DMOL"] at p. 7, *citing* <u>Pampillonia,</u> 138 F.3d at 460-61.  They argue that the Second Circuit's definition of fraudulent joinder – a situation where "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action" against a non-diverse defendant, in this case the detailers – applies and should operate on the facts of these matters.  *See* DMOL at p. 7.

As we noted in the original remand motion papers, the term "no possibility" has been interpreted differently by various courts. Sometimes it has been interpreted as meaning no "reasonable possibility" or having "no reasonable basis." <u>In Re: Rezulin Products Liability Litigation,</u> 133 F.Supp.2d 272, 280, fn. 4 (SDNY 2001). In other cases the term has been interpreted literally, the court specifically disagreeing with the <u>Rezulin</u> court.  *See* <u>Arseneault v. Congoleum Corp.,</u> 2002 US Dist. LEXIS 5084 (SDNY 2002). The term "no possibility" has been

2

held to be the equivalent of "legally impossible" <u>Stan Winston Creatures Inc. v. Toys R Us,</u> 2003 WL 1907978 (S.D.N.Y. 2003). In <u>Nemazee v. Premier Inc.,</u> 232 F.Supp.2d 172, 178 (S.D.N.Y. 2002), the court wrote: "Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only when there is 'no possibility' of recovery is such a finding warranted."

The Appellate Division, Fourth Department noted that the manufacturer's liability for injuries alleged in prescription drug products liability actions, if any, is directly related to the adequacy of the warning provided.  <u>Wolfgruber v. Upjohn Co</u>.  72 A.D.2d 59, 61, 423 N.Y.S.2d 95, 96 - 97 (4th Dep't  1979), *citing* Merrill, "Compensation for Prescription Drug Injuries," 59 Va.L.Rev. 1; Rheingold, Products Liability The Ethical Drug Manufacturer's Liability, 18 Rutgers L. Rev. 947; Willig, The Comment "K" Character: A Conceptual Barrier to Strict Liability, 29 Mercer L.Rev. 545). The scope of the warning is the key factor in a drug products liability suit because prescription drugs are "unavoidably unsafe products". As explained in Comment "K" of the Restatement (Second) of Torts, s 402A: ". . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous . . . (M)edical experience . . . justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, *again with the qualification that they are properly prepared and marketed,* and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use . . . ."  <u>Wolfgruber</u>,  72 A.D.2d at 61, 423 N.Y.S.2d at 96 – 97.   Where, as here, the detailers were provided inadequate or incorrect information, or where, as here, the detailers failed to advise the medical community of the known dangers of the manufacturer's products, they and their employers can be held liable for injuries arising from those dangers.

Evidence adduced in the course of the diet drug litigation includes documents that indicate prescribing physicians were reluctant to prescribe Wyeth's diet drug Redux for more than 60 days out of concern about primary pulmonary hypertension.  Detailers were instructed to tell the physicians that the course of treatment should be as long as necessary for the

patient's BMI to drop below 30.  In this way Redux would not be outsold by a competing drug company's new diet drug, Meridia, which was indicated for long term use.  *See* Memorandum to District sales personnel, at Exhibit "B."

It is well established that "a drug manufacturer is under a duty to warn the medical profession of dangers inherent in its biological drugs which, in the exercise of reasonable care, it knew or should have known to exist."  Baker v. St. Agnes Hospital, 70 A.D.2d 400, 405, 421 N.Y.S.2d 81, 85 (1st Dep't  1979), *citing, inter alia,* Tinnerholm v. Parke Davis & Co., 285 F.Supp. 432, 451, (SDNY 1968).   The Tinnerholm Court noted that

> [pharmaceutical] advertising will take the form, among other things, of promotional literature to the physician, statements of 'detail' men who solicit purchases by the physician, package inserts, labels and the like, and/or articles in medical journals. Id. at 965. Can liability of the manufacturer be sustained even though the consumer has not relief on any representation? One New York decision has held that the physician is an agent of the patient for the special purpose of receiving statements from the manufacturer. Wechsler v. Hoffman-La Roche, Inc., 198 Misc. 540, 99 N.Y.S.2d 588 (Sup.Ct.1950). A number of commentators have expressed the view that the representation need not be made directly to the injured consumer. See, e.g., 2 Frumer & Friedman § 16.04(4); 2 Harper & James, Torts § 28.7 (1956); Rheingold at 976-77. Nevertheless, if direct communication is dispensed with, it would appear that a plaintiff must still prove reliance by the physician. [citation omitted].

Tinnerholm v. Parke Davis & Co., 285 F.Supp. at 443 (emphasis added).  To avoid liability, the manufacturer must warn of "all potential dangers in its prescription drugs that it knew, or, in the exercise of reasonable care, should have known to exist." Golod v. La Roche, 964 F.Supp. 841, 853 (S.D.N.Y. 1997).  Thus, as the Golod Court noted, "the manufacturer's duty to warn of potential side effects of a prescription drug 'is fulfilled by giving adequate warning through the prescribing physician, not directly to the patient.'" Id.  Consequently, it must also be understood that the manufacturer's failure to provide adequate warnings, through its detail men or otherwise, or the detailer's failure to fully apprise the medical professional of the known dangers of a particular medication, will give rise to liability.

The learned intermediary doctrine, used as a bar to direct claims by the plaintiffs against the detailers or the drug manufacturers, only operates when the manufacturer warned the physician of the dangers of the drug at issue.  In the Baycol Products Liability Litigation (MDL-1431), for example, the United States District Court for the District of Minnesota held that where the drug manufacturer, Bayer, failed to provide sufficient and/or correct warnings of Baycol's risks to physicians, the sales representative was a proper defendant in the matter.  In re: Baycol Products Litigation, MDL 1431 (MJD), Case No. 02-2985, February 28, 2003. The Court noted that Bayer's sales representative, named as a defendant, knew through discussions with other sales representatives that Baycol had been associated with a markedly increased risk of rhabdomyolysis as compared to other statin medications, but nonetheless continued to promote Baycol as the safer statin.  In the face of this finding, the Court found that Bayer had failed to show that there was no possibility that the plaintiffs could state a cause of action against the sales representative and thereupon, remanded the matter to the State Court of Gwinnett County, Georgia, where plaintiffs had initially commenced their action.  A copy of the decision is annexed here at Exhibit "A".

Similarly, in Brown v. Glaxo, Inc., 790 So.2d 35 (La. App. 1 Cir. 2000) the Court held that where the adequacy of written warnings provided to physicians or in package inserts was established, the manufacturer or its sales representative could be liable where the sales representative's verbal warning superceded or interdicted the written warnings provided to the physician.  In the Brown matter, Glaxo's written warnings included cardiac vasospasm as a known side effect of using its migraine medication, Imitrex.  Where the plaintiff husband, himself the pharmacist who filled the prescription for his wife was told by the Glaxo sales representative that chest pain or tightness related to the use of Imitrex was not cardiac-related and not serious, the Court held that the sales representative's verbal representations had been sufficient to interdict or supercede Glaxo's written warnings to the prescribing physician.  Brown v. Glaxo, 790 So.2d at 40-41.  As such, the Court held that

> Glaxo must take responsibility for any confusion over the cause of
> the chest pains caused by the verbal representation it chose to
> make.  In the case of the Browns, we find that Glaxo's verbal
> representations interdicted or superseded the written warning to
> the doctor.  By its own representations, Glaxo removed this case
> from the protection of the learned intermediary doctrine.  The
> record provides reasonable support for the finding that Glaxo's
> warning to the Browns was inadequate under the particular facts
> of this case.  Id.  Without an adequate warning to the Browns, we
> find support for the jury's verdict that Imitrex was unreasonably
> dangerous to Mrs. Brown.

Brown v. Glaxo, 790 So.2d at 41.

Finally, in a case related to claims against a *non-drug company* sales representative, the

Appellate Division, First Department found that the plaintiff had stated a cause of action against

a sales representative in a case where the sales representative (an insurance broker) was sued

for common-law fraud.  Plaintiffs alleged that the sales representative knew of and failed to warn

his insured of the unfavorable history of a prospective employee that the insured had

interviewed, and that the insured had hired that prospective employee to his detriment and in

reliance on the broker's endorsement of the employee.  *See* Patterson v. R.M. Stephens & Co.,

232 A.D.2d 178, 647 N.Y.S.2d 760 (1st Dep't 1996).

Where the detailers working for Wyeth knew of the reports that their products, Pondimin

and Redux were not proven safe for long term use, and that they came with risks of causing

heart valve and pulmonary problems, and failed to warn the prescribing physicians of that fact,

the plaintiffs here have plainly stated a viable cause of action against those detailers.  As such,

the instant remand motion should be denied as defendants have failed to meet their burden to

> demonstrate by clear and convincing evidence either that there
> has been outright fraud committed in the plaintiff's pleadings, or
> that there is no possibility, based on the pleadings, that a plaintiff
> can state a cause of action against the non-diverse defendants in
> state court.

In re Rezulin Products Liability Litigation, 133 F. Supp.2d 272, 279-280 (SDNY 2001).

Defendants have failed to offer support for their contention that in this case there is "no

possibility, based on the pleadings, that plaintiff can state a cause of action" against the

wholesaler defendants (<u>Pampillonia v. RJR Nabisco,</u> 138 F3d 459-61 [2d Cir. 1998]), since resolution of all issues in plaintiff's favor is required under Second Circuit precedent. *See* <u>Whitaker v. American Telecasting,</u> 261 F3d 196 (2d Cir. 2001); <u>Norwalk v. Air-Way Electric,</u> 87 F2d 317 (2d Cir. 1937).

Accordingly, defendants' argument lacks merit,[1] and the liability claim against the detailer defendants is cognizable.

### POINT II.
### THIS COURT'S DECISION ON THE REMAND ISSUE SHOULD NOT BE DEFERRED

Defendants request a "stay pending transfer to the MDL court" (DMOL, p. 4), arguing that this will "conserve judicial resources and ensure that similar issues of fraudulent joinder" will be decided "uniformly and consistently" (DMOL, p. 3). On the contrary, as noted in <u>In Re: Consolidated Fen Phen Cases,</u> 2003 NY Dist. LEXIS 20231 (EDNY 2003), the district court "retains jurisdiction during the pendency of a conditional transfer to the signed remand orders." *See* Panel Rule §5.1,199 FRD 425,427 [2002] ("The pendency of a…conditional transfer order…before the panel concerning transfer…of an action pursuant to 28 USC §1407 does not affect or suspend orders in pre-trial proceedings in the district court in which the action is pending, and does not in any way limit the pre-trial jurisdiction of that court").

This is why the "filing of a motion before the MDL panel does not require [the reviewing court] to defer its consideration of the motion." *See* <u>In Re: Duke Energy Corp.,</u> 2003 US Dist. LEXIS 15406 (SDNY 2002); <u>Albert Fadem Trust v. Worldcom,</u> 2002 US Dist. LEXIS 15272 (SDNY 2002).  Because this case presents an issue of New York law which even defendants admit is somewhat unsettled, this Court is in the best position to render a decision, as it

---

[1]There has been no substantive discovery in this case; thus the facts necessary to establish negligence are solely within the knowledge of the detailer defendants.

routinely applies New York law in federal diversity cases. The MDL court was no greater

experience or expertise regarding whether remand is appropriate in this case.

 We therefore submit that this Court should not defer ruling on this issue because Wyeth

has "notified the Judicial Panel on Multi-District Litigation…of the existence of [this] case"

(DMOL, p. 3).


# CONCLUSION

 Based upon the foregoing, it is respectfully submitted that the within motion should be

granted in all respects.


Dated: Great River, New York
   August 30, 2004

          Respectfully submitted,

          NAPOLI BERN & ASSOC., LLP
          Attorneys for Plaintiffs

    By:

          Denise A. Rubin (DR-5591)


          3500 Sunrise Hwy., Suite T-207
          Great River, New York 11739
          (212) 267-3700

# EXHIBIT A



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION                MDL No. 1431
                                                 (MJD)


This Document relates to:

Cora Collins and Countee Collins v.
Bayer Corporation et al.,                        Case No. 02-2985

---

     Joseph M Murphey and Mitchel S. Evans, Crim & Bassler, L.L.P., for and on behalf of Plaintiffs.

     Peter W. Sipkins, Dorsey & Whitney, Philip S. Beck, Adam L. Hoeflich and Tarek Ismail, Barlit Beck Herman Palenchar & Scott, Susan A. Weber and Sara J. Gourley, Sidley Austin Brown & Wood, Gene S. Schaerr and Frank R. Volpe, Sidley Austin Brown & Wood LLP, Richard K. Dandrea, Eckert Seamens Cherin & Mellot, LLC and Patricia Lowry and John W. Little III, Steel Hector & Davis LLP for and on behalf of Bayer Corporation.

---

     This matter is before the Court upon Plaintiffs' motion for remand.  Bayer Corporation ("Bayer") opposes the motion, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

Background

     Plaintiffs are a married couple and citizens of Georgia.  Plaintiff Cora Collins alleges that she ingested Baycol, and as a result, she suffered from rhabdomyolysis.  In the Complaint, Plaintiffs have asserted causes of action against Bayer AG, Bayer Corporation, SmithKline Beecham Corporation d/b/a GlaxoSmithKline and Richard Avedian, a Bayer sales representative.

FEB 28 2003

RICHARD D. SLETTEN, CLERK

JUDGMENT ENTD_____
DEPUTY CLERK_____



This action was originally filed in Georgia state court on May 24, 2002. The matter was timely removed by Bayer Corporation on the basis of diversity jurisdiction. Bayer alleged in its removal petition that the only non-diverse defendant, Mr. Avedian, was fraudulently joined. The matter was then transferred to this District by the Judicial Panel on Multidistrict Litigation.

Standard

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of a remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

1. Fraudulent Joinder

"Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001). The burden is on the removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant or that there has been outright fraud in the pleading of jurisdictional facts. Parnas v. General Motors Corporation, 879 F. Supp. 91, 92 (E.D. Mo. 1995). In deciding this issue, the Court may consider the pleadings and supporting affidavits. Id.

2



In the Complaint, Plaintiffs assert three claims against Richard Avedian, a Bayer sales representative: strict liability failure to warn, negligent misrepresentation and negligence.  Comp. ¶¶ 39-50, 51-60 and 61-68.  Bayer argues that under Georgia law, Mr. Avedian, in his role as a sales representative, had no duty to warn plaintiffs.  Bayer argues that Georgia has adopted the "learned intermediary doctrine", which provides that individuals who manufacture, distribute or promote products that can only be sold through a learned intermediary are under no duty to end users of those products for any risks associated with such product.  See McCombs v. Synthes (U.S.A.), 250 Ga. App. 543, 553 S.E.2d 17, 21 (Ga. Ct. App. 2001).

While McCombs applies to the doctrine to a medical device, the Georgia courts have applied to the doctrine to prescription drugs.  For example, the doctrine was applied in Presto v. Sandoz Pharmaceuticals Corp., 226 Ga. App. 547, 487 S.E.2d 70 (Ga. Ct. App. 1997) cert. denied (Jan. 5, 1998).  There, the court recognized that "the manufacturer of a prescription drug is not normally required to directly warn the patient of dangers in its use. 'Ordinarily, in the case of prescription drugs, a warning as to possible danger in its use to the prescribing physician is sufficient.'"  Presto, 487 S.E.2d at 73 (citation omitted).  Applying the law to the allegations contained in the complaint, the court in Presto noted that plaintiffs had made no claim that the manufacturer had failed to warn the physician, and had even presented evidence that an adequate warning was included in the medication's packaging.  Based on these circumstances, the court held that the learned intermediary doctrine applied and that the manufacturer had no further duty to the plaintiff.  Id.  See also, Singleton v. Airco, Inc., 169 Ga. App. 662, 314



S.E.2d 680 (Ga. Ct. App. 1984)(where no genuine issue of fact existed that warning was adequate, summary judgment in favor of drug manufacturer appropriate based on learned intermediary doctrine).

Although not explicit, these cases indicate that where a manufacturer fails to provide adequate warnings to the prescribing physician, a cause of action will lie against the manufacturer.  Bayer argues that in McCombs, the court rejected this assertion.  A close reading of McCombs however, reveals that the court refused to address the assertion raised by the dissent, that the learned intermediary doctrine should only be applied when the manufacturer warned the physician of the dangers of the drug at issue, because such argument was not raised before the trial court.  McCombs, 553 S.E.2d at 21 (noting that appellate courts review only for errors of law committed by trial court, where motions or objections are properly presented for ruling by the trial court.)  In fact, Bayer has not cited to a single decision to support the argument that, when a manufacturer fails to warn, or misrepresents the danger associated with a prescription drug, the manufacturer escapes liability to the one injured by the drug through the doctrine of learned intermediary.

In this case, Plaintiffs allege that the manufacturing defendants provided insufficient and/or incorrect warnings of Baycol's risks, and that adequate instructions/warnings were not provided to physicians.  Comp. ¶ 29.  With respect to Mr. Avedian, Plaintiffs allege that through discussions with other sales representatives, Mr. Avedian knew that Baycol had been associated with a markedly increased risk of rhabdomyolysis as compared to other statins, but that he continued to promote Baycol as

4



the safer statin.  Comp. ¶ 6(e).  Plaintiffs further allege that the treating physician relied on Mr. Avedian's statements concerning Baycol's safety and efficacy, and that after Plaintiff Cora Collins suffered an adverse injury, and was confronted by the treating physician, Mr. Avedian continued to knowingly misrepresent and conceal the truth of Baycol's safety and efficacy.  Id. ¶ 6(f) and (g).

Based on these allegations, the Court finds that Bayer has failed to show that there is no possibility that Plaintiffs can state a cause of action against Mr. Avedian.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for remand is GRANTED.  This matter is hereby remanded to the state court of Gwinnett County, Georgia.

Date:  2-28-03

Michael J. Davis
United States District Court

5

# EXHIBIT B

PLAINTIFF'S
EXHIBIT

**From:**   ANGELO RENALDO III
**To:**     DISTRICT
**Date:**   3/21/97 12:17pm
**Subject:** Redux Strategies

I have recently attended a Redux strategy meeting.  As a result, I have a few thoughts for you to think about.........
1.The average script for Redux is 60 days of therapy.   Doctors are afraid of long term use due to PPH. The temptation is to tell the doctor to use the drug for three months.  **This is certain disaster!**  Meridian, the new knoll product is also indicated for long term use.  They would **love** to know that you are going to your doctors and suggesting 3 months of therapy with Redux.  A better suggestion for a short  term user of Redux is to use Redux until the patient's BMI drops below 30.......their goal weight.            was on redux 18 weeks and dropped her BMI to 31.   She only needs 4-5 more weeks to achieve a BMI of 29-30.
For       a course of therapy would be about 6 months.  So if you have short term users, suggest that they keep the patient on until they get them to a goal level.....such as a BMI of 30 or lower.  This is better than cutting them off too early.  It also is less radicle than suggesting the patient stay on for ever.
2. The Knoll product Meridian is coming very soon.  It raises norepinephrine .
We need to discuss our mechanism of action on each call and discuss the problems that NE can cause with products such as fastin.  Some of the norepinephrine problems are:
a. Elevate bp, HR
b. Vasoconstriction.......bad in a diabetic or cardiac patient
c. Increases insulin release.......effects sugar level in Diabetics.
**Do not wait for the launch of Meridian........it will be too late......sell**
**the serotonin benefits now!**


# MATERIAL REDACTED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
GOODEN, LOLITA ,                                                                        CV 04 2487 (JG)
                              Plaintiff,

              v.

AMERICAN HOME PRODUCTS CORP., et al.,
                              Defendants.

...*And Five Related Actions*
-------------------------------------------------------

      DENISE A. RUBIN, an attorney duly licensed to practice in the State of New York and admitted

to practice before this Honorable Court, hereby declares that on August 30, 2004, I caused the within

PLAINTIFFS MEMORANDUM IN REPLY AND EXHIBITS  to be served by regular mail on the

following persons designated as the defendants' agent for delivery of service in the above-captioned

matter:

           Michael D. Schissel, Esq.
           Arnold & Porter, LLP
           399 Park Avenue
           New York, New York

           Barbara Wrubel, Esq.
           Katherine Armstrong, Esq.
           Skadden Arps Slate Meagher & Flom, LLP
           Attorneys for Defendants Indevus Pharmaceuticals, Inc.
             (f/k/a Interneuron Pharmaceuticals, Inc.)
           Four Times Square
           New York, New York  10036
           (212) 735-3000

           Denise A. Rubin (DR-5591)

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOODEN, LOLITA ,

Plaintiff,                                    CV 04 2487 (JG)

v.

AMERICAN HOME PRODUCTS CORP., et al.,
Defendants.

*…And Five Related Actions*

================================================================
### PLAINTIFFS' REPLY MEMORANDUM AND EXHIBITS ON REMAND MOTION
================================================================

**NAPOLI KAISER BERN & ASSOCIATES, LLP**
*Attorneys for* :  Plaintiff(s)
*Office and Post Office Address, Telephone*
3500 Sunrise Hwy. Suite T207
Great River,  New York 11739
(212) 267-3700
================================================================
To:

Attorney(s) for
================================================================
Service of a copy of the within                                    is hereby admitted.
Dated,       _____
Attorney(s) for
================================================================
PLEASE TAKE NOTICE:

?       <u>NOTICE OF ENTRY</u>  that the within is a (certified) true copy of a          duly entered in the office of the
        clerk of the within name court on                        20____

?       <u>NOTICE OF SETTLEMENT</u>   that an order                        of which the within is a true copy will be
        presented for settlement to the HON.                        one of the judges of the within named Court,
        at                        on                        200__        at                        M.
Dated,

Yours, etc.
NAPOLI BERN & ASSOCIATES, LLP

12